𝔍𝔫 𝔱𝔥𝔢 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔱𝔥𝔢 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰
𝔉𝔬𝔯 𝔱𝔥𝔢 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 𝔖𝔬𝔲𝔱𝔥 𝔆𝔞𝔯𝔬𝔩𝔦𝔫𝔞

### BEAUFORT DIVISION

| | | |
|---|---|---|
| **Arthur Eugene Graddick, #250313** | ) | |
| | ) | Civil Action No. 2:06-1404-RBH-GCK |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **Warden Stan Burtt; and** | ) | **OF THE MAGISTRATE JUDGE** |
| **Henry McMaster, Attorney General** | ) | |
| **of the State of South Carolina,** | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## I.    INTRODUCTION

The Petitioner, Arthur Eugene Graddick ("Petitioner" or "Graddick"), a state prisoner proceeding without the assistance of counsel, seeks *habeas corpus* relief under Title 28, United States Code Section 2254. By definition, the relief which he seeks must be based upon a finding that he is being illegally detained in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3). This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of Title 28, United States Code, Sections 636(b)(1)(A) and (B), and Local Civil Rules 73.02(B)(2)(c) and (e), D.S.C. The above-captioned Respondents have filed a motion for summary judgment. Because this is a dispositive motion, this Report and Recommendation is entered for review by the District Judge.

## II.    *PRO SE* PETITION

Petitioner is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978). Under established local procedure in this judicial district, a careful review has been

made of the *pro se* Petition herein pursuant to the procedural provisions of 28 U.S.C. § 1915, 28 U.S.C. § 1915A, and the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214. This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

     *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys, and a federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a potentially meritorious case. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *and Cruz v. Beto*, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true. *Fine v. City of New York*, 529 F.2d 70, 74 (2d Cir.1975). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III.    PROCEDURAL HISTORY IN STATE COURT

#### A.  Proceedings in the Court of General Sessions

During the December 1995 term of the Court of General Sessions for Charleston County, the grand jury indicted Petitioner and three co-defendants for the murder of Richard Allen Brown (the "Victim"), who had been shot in the back during the early morning hours of Saturday, September 9, 1995 at a club called Gregory's on Meeting Street in downtown Charleston.[1]  (App. 676-681)  Petitioner pled not guilty to the charge.

Petitioner was represented by William L. Runyon, Jr., Esquire.  The State was represented Assistant Ninth Circuit Solicitor Amie L. Clifford, Esquire.  On February 27, 1998, the Honorable Costa M. Pleicones held a motions hearing on Runyon's motion to be relieved as counsel, and denied the motion.  (App. 1-6)

Almost four months later, on June 8-9, 1998, Petitioner was tried before Judge Pleicones and a jury.  Petitioner's defense was the State could not prove identity.  The jury convicted him of murder.  (App. 7-451)  On June 10, 1998, Judge Pleicones sentenced Petitioner to life imprisonment.  (App. 452-463)

#### B.  Petitioner's Direct Appeal

Petitioner served and filed a timely notice of appeal before the South Carolina Supreme Court.  On appeal, he was represented by Michael S. Seekings and W. Peter Beck of the Charleston Bar.  In the brief, they raised the following claims:

1.  Should the Trial Court have granted Attorney's Motion to Be Relieved when both attorney and Appellant notified the Court that Attorney would not be prepared for trial?

2.  Did the Trial Court err by allowing a State's witness to offer inadmissible hearsay testimony regarding a gun in the possession of one of Appellant's associates when the statement did not meet the tests of SCRE 804?

---

[1]     More specifically, the events of that evening transpired over the course of late Friday night and early Saturday morning, September 8 and 9, 1995.

3.    Did the Trial Court err when it permitted the Solicitor to cross-examine Appellant's witness about witness' prior intention not to testify because he was protected by the Constitution's Fifth Amendment privilege not to incriminate himself relating to charges stemming from the same murder?

4.    Did the Trial Court err by refusing Appellant's request to charge his jury on the law regarding mere presence when the evidence supported such a charge?

5.    Did the Trial Court err by refusing Appellant's request to charge his jury with the South Carolina Supreme Court's recommended instruction on circumstantial evidence from *State v. Grippon*?

On June 4, 2001, the South Carolina Supreme Court entered its opinion affirming the conviction. *State v. Arthur Eugene Graddick*, 345 S.C. 383, 548 S.E.2d 210 (2001).

### C.  Petitioner's Application for Post-Conviction Relief

The Petitioner timely filed an application for post-conviction relief ("APCR") on August 21, 2001.  (App. 464-468)  Petitioner raised the following grounds for relief:

1.    Ineffective assistance of counsel.

Counsel operated under conflict of interest , and failed to raise obvious and significant issues.

2.    Sixth Amendment violation.

The trial court failed to inquire into conflict of interest.  (App. 465)

Subsequently, on October 15, 2001, the Court appointed F. Mitchell Johnson, Esquire of the Charleston County Bar to represent Petitioner on his APCR.  The Respondents filed a Return on February 11, 2002.  (App. 469-474)

An evidentiary hearing on the APCR was held on September 10, 2003, before the Honorable R. Markley Dennis.  (App. 475-645)  The Petitioner was present and was represented by H. Stanley Feldman of the Charleston County bar, who appeared in lieu of Mr. Johnson.  The PCR court had before it the records of the Charleston County Clerk of Court regarding Petitioner's convictions and the sentencing records from the South Carolina Department of Corrections, a copy of the trial transcript before Judge Pleicones (two volumes), the Record on Appeal, the Final Brief of Appellant, the Final Brief of Respondents,

the opinion issued by the South Caroline Supreme Court (*State v. Arthur Eugene Graddick*, 345 S.C. 383, 548 S.E.2d 210 (2001)) and exhibits from the hearing.

In addition to the two issues raised in the written APCR, Petitioner raised the following issues at the hearing, which the PCR Court accepted as amendments to the written application:

A. Ineffective Assistance of Counsel.

1. Counsel failed to conduct an adequate investigation and present evidence in defense.

a. Counsel failed to adequately investigate the crime scene at Maple Street.

b. Counsel failed to review the Medical Examiner's autopsy report.

c. Counsel erred in stipulating Medical Examiner's testimony rather than calling him as a witness.

d. Counsel erred in failing to emphasize the victim's blood alcohol content and evidence of drinking and/or intoxication.

e. Counsel failed to investigate the bars visited by the victim and defendant the night of the incident.

f. Counsel failed to present evidence of the "bar stamp" on the victim.

g. Counsel erred in stipulating the wound as a distant gunshot.

h. Counsel erred in failing to submit matters to an independent pathologist.

I. Counsel erred in stipulating the admission of the videotape of the line-up where no one had identified the Applicant since it resulted in an in-court identification.

j. Counsel erred in failing to request a *Neil v. Biggers* identification hearing.

k. Counsel erred in failing to develop whether his client was the only person in both photo and video line-ups.

l. Counsel erred in failing to have bullet recovered at scene sent to SLED where there was testimony of more than one gun at scene.

m. Counsel erred by failing to demand a *Blair* competency hearing when he had earlier moved for a competency evaluation.

n. Counsel failed to adequately meet with the Applicant adequately prior to the trial.

o. Counsel erred in failing to fully pursue his removal as counsel due to irreconcilable conflicts of interest.

p. Counsel erred in recommending that the Applicant waive his right to testify where there was no prior record.

q. Counsel failed to adequately cross-examine the following witnesses:
    1. Lorenzo Trapp
    2. Leonard Gregory
    3. Eric Ancrum

r. Counsel erred in getting a plea offer when he did not do it.

Testimony was taken with respect to these issues, and on December 8, 2003, the Honorable R. Markley Dennis entered his written order denying the application for PCR in its entirety. (App. 646-674)

The Petitioner made a notice of appeal to the South Carolina Supreme Court and was represented by Robert M. Dudek of the South Carolina Office of Appellate Defense. On August 11, 2004, counsel filed a "*Johnson* Petition for Writ of Certiorari"[2] requesting to be relieved, and raised the following as the sole arguable ground for appeal:

Was defense counsel ineffective for failing to present available evidence the decedent had a .20 blood-alcohol content, since the state's sole eyewitness, who claimed he could identify petitioner as the shooter outside the tavern in the dark, was drinking with the decedent the entire evening, and this evidence of his level of intoxication after their drinking together also cast doubt on that witness's state of mind and his reliability? (*Johnson* Petition, p. 2).

On May 24, 2005, the South Carolina Supreme Court transferred the case to the South Carolina Court of Appeals. On April 10, 2006 , the South Carolina Court of Appeals entered its order denying certiorari. On May 1, 2006, the Remittitur was entered.

Meanwhile, at the time the appeal was pending before state court, Graddick filed a petitioner for federal habeas corpus review. *See Graddick v. Burtt, et al*, C.A. 9:05-2871-

---

[2]     *See Johnson v. State*, 294 S.C. 310, 364 S.E.2d 201 (S.C. 1988).

RBH-GCK.  On March 9, 2006, the undersigned United States Magistrate Judge entered a Rule 41 order dismissing the matter without prejudice.[3]

## IV.  FEDERAL COURT HISTORY

### A.  Petitioner's Petition for a Writ of Habeas Corpus

Petitioner presently is confined in the Lieber Correctional Institution ("LCI") of the South Carolina Department of Corrections ("SCDC").  Petitioner filed this Petition for a writ of *habeas corpus* (the "Petition") on May 5, 2006 against Warden Stan Burtt, and Henry McMaster, the Attorney General of the State of South Carolina (collectively, the

---

[3]     In his first pro se federal habeas corpus petition in 2005, Graddick made the following allegations:

> I. Counsel was inept and constitutionally ineffective for failing to raise the issue that the decedent was legally drunk.
>
>> A. The state's key witness who avers that he saw the petitioner shoot the victim was the drinking partner of the victim and the victim's blood alcohol level was .20 which is legally under the influence in the state of South Carolina. Trial counsel did not alert the jury to this undeniable fact, for the jury to draw the inference that the state's key witness was also drunk and under the circumstances of this case the state's key witness could not have identified the petitioner and this would have case doubt on the identification.
>
> II. The Trial Court Refused to give the jury a requested instruction on the law of mere presence when there was evidence for the instruction.
>
>> A. There was an abundance of evidence adduced at trial for the Petitioner to receive an instruction on the law for mere presence at the crime scene in this case, and trial counsel moved for this instruction, and the court denied the request, even when there was evidence for the instruction.
>
> III. I am being held in custody in violation of the Fourteenth Amendment to the U.S Constitution Because A Rational Trier of Fact Could Not Find Me Guilty.
>
>> A. No rational trier of fact would find me guilty of every element and fact to convict me for the crime of murder. The state had no physical evidence at all and their key witness who claims that he saw me shoot the victim was under the influence of alcohol and could not pick me out of a photo lineup or a live line up moreover [sic] never saw the shooter's face in whole but a side view.

"Respondents").[4]  [1-1]  The Petition listed numerous grounds for relief, which will be set forth and discussed in detail below.

After the case was brought into proper form, the undersigned issued an Order on June 2, 2006, which authorized service on the Respondents and notified Petitioner of the change of address rule.  [5-1]  The Respondents accepted service and moved for an order enlarging time in which to respond [7-1], which was granted by the undersigned on July 26, 2006.  [9-1] Thereafter, in response to Petitioner's Petition for *habeas corpus* relief, the Respondents filed a Motion for Summary Judgment and a fifty (50) page Return and Memorandum of Law in Support of Motion for Summary Judgment (the "Return").  [11-1; 10-1]

The undersigned issued an Order on July 31, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Petitioner of the summary judgment dismissal procedure and the possible consequences if he failed to respond adequately to the Motion for Summary Judgment.[5]  [13-1]  On August 24, 2006, Petitioner filed a twenty-one (21) page Brief in Opposition to Respondents' Motion for Summary Judgment.  [14-1]  Due to the length and detail contained in the Petitioner's Brief, on August 28, 2006, the undersigned, *sua sponte,* granted the Respondents an additional fifteen (15) days in which to file a response, and extended the page limitation by an additional ten (10) pages, if needed.  [15-1]  On September 29, 2006, the Respondents filed their Reply.  [16-1]

---

[4]     Petitioner has the benefit of the holding in *Houston v. Lack*, 487 U.S. 266 (1988) with respect to the "delivery" date of his Petition.

[5]     The explanation to the *pro se* litigant is required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which was a civil rights case.  The same procedure has been held to apply in federal *habeas corpus* cases under *Webb v. Garrison*, No. 77-1855 (4th Cir., decided July 6, 1977).

## V.  DISCUSSION OF THE APPLICABLE STATUTES

### A.  Application of the Antiterrorism and Effective Death Penalty Act of 1996

Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.), *cert. denied*, 521 U.S. 371 (1998); *Green v. French*, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999).  As amended, Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. §§ 2254(d)(1) & (2).

With respect to the first prong of the analysis under Section 2254(d), the United States Supreme Court has explained that a state court adjudication is "contrary to" clearly established Federal law only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (plurality opinion).  An "unreasonable application" of Federal law will be found "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 529 U.S. at 412-413.  An "unreasonable application" likewise will be found if the state court "was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled."  *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000) (opinion of Kennedy, J.).

Yet as *Williams* teaches, a state court's "unreasonable application" of the law informs the federal court to the extent that the latter "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Bates v. Lee*, 308 F.3d 411, 417 (4th Cir. 2002), *cert. denied,* 538 U.S. 1061 (2003), *quoting Williams*, 529 U.S. at 411.  The Fourth Circuit has held that the state court's application of federal law must be "objectively unreasonable."  *Oken v. Corcoran*, 220 F.3d 259, 264 (4th Cir. 2000) (noting that the Supreme Court in *Williams* "adopted" the holding in *Green v. French*, 143 F.3d 865, 870 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999) that the "unreasonable application" inquiry is an objective inquiry.).

Turning to Section 2254(d)(2), the proper analysis for establishing whether there exists an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding" is framed by Section 2254(e)(1), which provides that the findings of fact by a state court are entitled to a "presumption of correctness" and the petitioner must bear the burden of rebutting that presumption by "clear and convincing evidence."  *See* 28 U.S.C. § 2254(e)(1); *Wilson v. Moore*, 999 F.Supp. 783 (D.S.C. 1998).  The federal courts must accord "considerable deference in their review of state *habeas* proceedings."  *Lovitt v. True*, 403 F.3d 171, 178 (4th Cir. 2005), *citing (Terry) Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

In sum, the AEDPA, as amended, exalts the role that a state court's decision plays in a habeas decision by specifically directing the federal court to make the state court decision the starting point of federal review.  Only if that decision deviates from the paradigm recited in Section 2254(d) can a habeas court grant relief.  *Smith v. Padula*, 444 F.Supp.2d 531, 537 (D.S.C. 2006).

## B.  Exhaustion of State Court Remedies

Relief under Section 2254 may be had only after a *habeas* petitioner has exhausted his state court remedies:  "It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in *habeas*. Claims not so raised are considered defaulted."  *Breard v. Green*, 523 U.S. 371, 375 (1998), *citing Wainwright v. Sykes*, 433 U.S. 72 (1977); *see also* 28 U.S.C. § 2254(b).  Thus, if claims were never reviewed by the highest court in South Carolina, those claims will be barred and cannot be considered by the Court.

The theory of exhaustion is based on 28 U.S.C. § 2254, which gives the federal court jurisdiction of habeas petitions.  Section 2254 allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States."  The statute states in part:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> > (B)(I) there is either an absence of available State corrective process; or
> > > (ii) circumstances exist that render such process ineffective to protect the . rights of the applicant.
>
> (2)  An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3)  A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court.  Reading subsections (b) and (c) in conjunction, it is clear that Section 2254 requires a petitioner to present any claim he has to

the state courts before he can proceed on the claim in this court.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

The court's exhaustion requirements under Section 2254 are explained in *Matthews v. Evatt*, 105 F.3d 907, 910-911 (4th Cir.), *cert. denied*, 522 U.S. 833 (1997):

> In the interest of giving state courts the first opportunity to consider alleged constitutional errors occurring in a defendant's state trial and sentencing, a § 2254 petitioner is required to "exhaust" all state court remedies before a federal district court can entertain his claims.  Thus, a federal habeas court may consider only those issues which have been "fairly presented" to the state courts[.]
>
> To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court.  The burden of proving that a claim has been exhausted lies with the petitioner.
>
> The exhaustion requirement, though not jurisdictional, is strictly enforced[.] (Citations omitted)

Indeed, a claim is unexhausted unless the substance of a petitioner's claims are "fairly presented" to the state courts.  The *Matthews* court explained, "[t]he ground relied upon must be presented face-up and squarely; the federal question must be plainly defined.  Oblique references which hint that a theory may be lurking in the woodwork will not suffice.  In other words, fair presentation contemplates that both operative facts and the controlling legal principles must be presented to the state court."  *Matthews v. Evatt*, 105 F.3d at 911.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction.  The first method involves a direct appeal and, pursuant to state law, a petitioner is required to state all his grounds in that appeal.  *See* SCAR 207 *and Blakeley v. Rabon*, 266 S.C. 68, 221 S.E.2d 767 (1976).  The second method involves the filing of an application for relief under the South Carolina Post Conviction Procedure Act, S.C. Code Ann. §§ 17-27-10–160.  The applicant may allege constitutional violations in a post-conviction relief ("PCR") proceeding, but only if the issue could not have been raised by direct appeal.  *Gibson v. State*, 329 S.C. 37, 41, 495 S.E.2d 426, 428 (1998), *citing* S.C. Code Ann. §§ 17-27-20(a)(1), (b).  In South Carolina, a PCR applicant is also required to state all of his grounds for relief in his application.  *See* S.C. Code Ann. § 17-27-90.  Thus, a petitioner's failure to pursue

a claim at the PCR hearing constitutes an abandonment of that claim, resulting in that claim being thereafter procedurally barred. *See Plyler v. State*, 309 S.C. 408, 424 S.E.2d 477 (1992) (finding an issue that was neither raised at the PCR hearing nor ruled upon by the PCR court procedurally barred); *see also* S.C. Code Ann. § 17-27-80. Furthermore, strict time deadlines govern the direct appeal and the filing of a PCR in the South Carolina Courts. A petition for PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45. Significantly, when the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim, <u>unless</u> the petitioner has procedurally bypassed (that is, procedurally defaulted) his state remedies, at which point he would be procedurally barred from raising them in federal court.

If any avenue of state relief remains available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *See, e.g., Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977) *and Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983). If a petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. *See Rose v. Lundy*, 455 U.S. 509, 515, 102 S.Ct. 1198, 71 L.Ed.2d.379 (1982).

## VI. PETITIONER'S GROUNDS FOR HABEAS CORPUS RELIEF

The Petitioner has set out four (4) lengthy grounds for relief, which are included in their entirety below. The Respondents concede, and this court finds, that each claim set forth by Petitioner is fully exhausted under 28 U.S.C. § 2254(b). Thus, as exhaustion is not an issue in this case, the court's discussion of each of the four (4) claims will be set forth immediately following each of the claims.

## A.  Ground One

**Ground One:**     Counsel was inept and constitutionally ineffective for failing to raise the issue that the decedent was legally drunk.

A.  The state's key witness avers that he saw petitioner shoot the victim was the drinking partner of the victim and the victims blood alcohol level was .20 which is legally under the influence.  Trial counsel did not alert the jury to this paramount fact for the jury to draw to inference that the state's key witness was also drunk, and identification was the key in this case, and the identification cannot be reliable if the witness was drunk, and counsel's ineptitude was prejudicial.

• He asserts in his memorandum that David Scott, who claimed he saw Graddick shoot the decedent was the "drinking partner" of the victim.  (App. 61, 67-68-93)

• Counsel testified he knew at trial that the decedent's blood alcohol level was .20 and felt all were "legally drunk."  (App. 492)

• Counsel failed to present evidence that the state witness was "legally drunk" which could have affected his ability to identify the shooter and failed to present evidence of  the decedent's blood alcohol level at .20 to allow an inference that the witness was above .10.

• He asserts that the same witness was unable to identify him from the photo-lineup (App. 86, 92-93,96), but identified him from a side angle.  (App. 103-106)[6]

## B.  Discussion of Ground One

The trial transcript contained testimony that all of the men involved in the altercations on the evening of September 8-9, 1995 had been drinking.  Graddick alleges that Runyon, his trial counsel, was constitutionally ineffective because he failed to raise the issue that the Victim was legally drunk and failed to present evidence which he possessed and which showed that the Victim's blood alcohol level was .20.  From this evidence, Petitioner argues that the jury could infer that David Scott (who later identified Petitioner as the shooter), who

---

[6]     This set of issues is exhausted:  This set of related issues was raised in the state PCR proceeding and denied by the state PCR court (App. 660-662) and also raised within the certiorari petition to the South Carolina Court of Appeals and denied.  Under *State v. McKennedy*, 348 S.C. 270, 275, 559 S.E.2d, 853 850 (2002), these issues were exhausted in the *Johnson* Petition.

also was drinking with the group of men, must have been drunk.[7]  Petitioner claims this information could have been used to impeach Scott's identification of him at trial.

Scott testified that he drank three or four rounds of beer after they got to the disco after midnight.  (App. 61)  After Scott and others left the disco, they went to Gregory's on Maple Street and "had a few drinks."  (App. 68).  In cross-examination, Runyon specifically asked Scott how much he had been drinking that night and Scott replied three (3) rounds and then another round or two at Gregory's.  (App. 93)  Thus, Runyon emphasized the issue of alcohol consumption before the jury.

With respect to whether Petitioner's trial counsel provided effective assistance of counsel, this Court's analysis will focus on whether the state courts properly applied the test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Williams v. Taylor*, 529 U.S. 362 (2000) (The "*Strickland* test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")  In *Strickland*, the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel.  A petitioner must first show that his counsel committed error.  If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.  To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  *Turner v. Bass*, 753 F.2d 342, 348 (4th Cir. 1985), *quoting Strickland, (reversed on other grounds*, 476 U.S. 28 (1986)).  In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced by the error.  *Strickland* requires that:

---

[7]        *See* Petition [1-2] at p. 3.

[T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

* * *

[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Strickland,* 466 U.S. at 694-95.

First, the PCR court found that Runyon's decision not to call the medical examiner to testify as to evidence of the Victim's own high blood alcohol content was not deficient representation, especially because neither the record nor the Petitioner could suggest any reason that the Victim's intoxication could have contributed to his death. Runyon acknowledged the abundant evidence of drinking on the evening of the incident. As the PCR Court noted, the evidence presented at trial made the jury acutely aware that both the Victim and others were engaged in drinking and partying on the evening that the Victim was shot. (App. 60, 131-136, 169-180, 191-195, 234-239, 251-255, 266-269, 342-346, 356-358) At the PCR hearing, trial counsel stated that he did not specifically bring forth the fact that the Victim's blood alcohol level was .20 because, as he explained, "I am not sure what – I mean, his blood alcohol certainly didn't contribute to his death. There's nothing in the [autopsy] report to indicate that he died as a result of alcohol poisoning or anything of that sort." (App. 489) Runyon added:

[O]ne of the reasons why I got an offer of manslaughter originally was because of the alcohol involved in this. Mr. Graddick was the one who wouldn't accept it, wouldn't talk about it, wouldn't authorize me to negotiate the twenty-year cap down. I mean, the simple fact is that–the question of the alcohol involved in this whole case, people drinking all night, was clearly established by not only the facts but the witnesses in the case. That is one [trial] technique, yeah, to show that the victim's blood alcohol was .20 [but it] doesn't render the fact–doesn't forgive the fact that he was shot the way that he was shot. (App. 491)

Thus, the fact that Runyon did not specifically put in to evidence the fact that the Victim's blood alcohol level was .20 was a matter of trial strategy, as he explained during the

PCR hearing.  Furthermore, Runyon stated that "[t]he strategy in this trial was determined by Mr. Graddick.  He tried to fix the witnesses, he tried to keep the case from coming to court, I mean–I was trying to do the best I could with what I had to work with, which was not a very compliant client or one who wanted to listen to me quite frankly."  (App. 491-492)  Thus, counsel articulated a valid reason for employing the strategy he used at trial.  The PCR court held that Petitioner had failed to satisfy his burden of proof concerning the particular significance of the Victim's blood alcohol content, or that the persons were legally drunk.  (App. 660)  In denying relief, the PCR court applied the familiar two-prong *Strickland* test,[8] stating that under the first prong, a criminal defendant must establish that counsel's performance "fell below an objective standard of reasonableness."  *Strickland* mandates that when reviewing counsel's performance, "a strong presumption [exists] that counsel's conduct falls within the wide range of reasonable professional assistance", *Id*. at 689, and that counsel "made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690.  Accordingly, the PCR court noted that "[j]udicial scrutiny of counsel's performance is highly deferential and not subject to the distorting effects of hindsight", allowing counsel to reasonably choose from a wide range of acceptable strategies.  (App. 657, *citing Strickland*, 466 U.S. at 689; *and Burket v. Angelone*, 208 F.3d 172 (4th Cir. 2000)).

Under the second *Strickland* prong, the PCR court held that a criminal defendant must demonstrate that he was prejudiced by his counsel's deficient performance to such a degree "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  (App. 657*, quoting Strickland* at 694) court found that this strategy was not objectively unreasonable.  (App. 657)  Indeed, Petitioner has failed to show how he was prejudiced to such a degree (by counsel's action) that there is a reasonable probability that the result of the trial would have been different.  Accordingly, the

---

[8]        *Strickland v. Washington*, 466 U.S. 668 (1984).

PCR court held that Runyon's conduct should not be deemed ineffective assistance of counsel. (App. 657, citing *Roseboro v. State*, 317 S.C. 292, 454 S.E.2d 312 (1995); *Stokes v. State*, 308 S.C. 546, 419 S.E.2d 778 (1992); *Caprood v. State*, 338 S.C. 103, 525 S.E.2d 514 (2000)).

As both of these conclusions represent a State court factual finding, it is presumed to be "correct", absent an applicant's showing of clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Petitioner's first ground for habeas corpus relief should be denied and dismissed.

### C.  Ground Two

**Ground Two:** My rights under Article IV § 2, and the 6th and 14th Amendments to the U.S. Const. by my motion to relieve counsel being denied.

> a. There was grounds present for the court to grant my motion to relieve counsel and counsel wanted to be relieved and the court interfered and attempted to smooth out things between me and counsel. I retained counsel and I could have fired counsel if I wanted to and the court interference denied me from effective assistance of counsel.

In support of this claim, Petitioner asserts that Runyon's comment, "Well my client's here, I'll prepare to represent him if he wants me to represent him" shows that Runyon was not prepared to litigate the case. (App. 2-3, Petition at Attachment p. 5.) In addition, Petitioner claims that Runyon failed to move the court for a mental evaluation to determine if he was competent to stand trial, "thus illuminating that counsel was not prepared for trial." (Petition at Attachment p. 6.)[9]

### D.  Discussion of Ground Two

Petitioner maintains that the trial judge erroneously denied trial counsel's pre-trial motion to be relieved as counsel, and that he was prejudiced by the trial judge's ruling because he consequently received ineffective assistance of counsel at trial.

---

[9]    This set of issues is exhausted: The general issue was raised in the direct appeal as Issue I, Final Brief of Appellant, p. 6-9. The South Carolina Supreme Court addressed the issue first as abandoned at trial and in the alternative as having no merit. The issue was re-asserted in the PCR hearing wherein he complained about the failure of counsel to hold a requested competency hearing. This was denied. (App. 667-668) Under *State v. McKennedy*, 348 S.C. 270, 275, 559 S.E.2d 853, 860 (2002), it was exhausted in the *Johnson* Petition.

The record reflects that the trial judge held the motions hearing on February 27, 1998, approximately three (3) months prior to trial, to address Runyon's motion to be relieved as counsel.  Runyon told Judge Pleicones that he had been retained by Graddick, and had received a "marginal initial retainer" but Runyon had not heard from Graddick for some time, "so out of an abundance of caution [he] moved to withdraw."  (App. 2)  When the trial court asked whether counsel wished to be relieved "now," Runyon said at the motions hearing,: "Well my client's here, I'll prepare to represent him if he wants me to represent him.  (App. 2-3)  Petitioner claims that Runyon should have been relieved as his counsel on the grounds that Runyon's statement demonstrates that Runyon was not prepared for trial at that time.[10] However, at the motions hearing, in response to Judge Pleicones' inquiry as to whether he wished for counsel to represent him, Graddick stated that counsel was "a good lawyer."  Judge Pleicones then explained that trial counsel had filed the motion "primarily as a defensive measure," which counsel was required to do.  Judge Pleicones explained that Graddick needed to cooperate and communicate with Runyon, and that Judge Pleicones might be forced to take measures, such as revoking Graddick's bond, if he did not do so.[11]  Finally, Judge Pleicones indicated that Graddick's failure to cooperate might further delay the case and require the trial judge to allow Runyon to withdraw from representation.  (App. 3-4)  Also at that motions hearing on February 27, 1998 before Judge Pleicones, and Runyon informed the court that if Graddick had not appeared for the motions hearing, he would have been willing to proceed without his client.  (App. 1-2)  He stated:  "As a practical matter, my position this morning if Mr. Graddick had not appeared was that if the court told me to try this case I'd try the case.  It wouldn't be the first time that because of lack of funds or because of that–I've tried a case *in absentia* and it probably won't be the last, but I just wanted to discharge my obligation both to

---

[10]     Petitioner's Brief [14-1] at p. 8.

[11]     Judge Pleicones also expressed some concern that Graddick might be a flight risk.  (App. 4)

Mr. Graddick and to the court." (App. 4) Finally, Runyon stated that "we have no problem with being ready whenever the solicitor wants us to be ready" for trial and Judge Pleicones indicated that the trial would be within the next four (4) months. (App. 4-6) Thus, as of February 27, 1998, it is clear that Graddick wanted Runyon to represent him.

Significantly, Runyon did not renew his motion to be relieved at any point during Graddick's June 8-10, 1998 trial. Furthermore, Graddick did not present Judge Pleicones with any claim that Runyon provided ineffective assistance or that he was dissatisfied with Runyon's representation during the trial.

In denying relief on this ground in the direct appeal, the South Carolina Supreme Court stated:

> Appellant argues he was unfairly prejudiced and denied effective assistance of counsel because the trial court denied defense counsel's motion to be relieved. We disagree. The trial court did not deny the motion. Rather, defense counsel withdrew the motion, leaving nothing for the trial court to rule upon.[12]
>
> . . . .
>
> [T]here is no reversible error here. A motion to relieve counsel is addressed to the discretion of the trial judge and will not be disturbed absent an abuse of discretion. (*Citing State v. Hyman*, 276 S.C. 559, 562, 281 S.E.2d 209, 211 (1981), *overruled on other grounds, State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991). Appellant bears the burden to show satisfactory cause for removal. *Id.* Appellant made only the most conclusory arguments why counsel should have been relieved: "Mr. Runyon is not representing my interests and is not fully prepared for this case. I do not feel comfortable going to court with him as my lawyer." The trial court did not abuse its discretion in refusing to grant appellant's request for new counsel mere days before the start of appellant's trial for murder.[13]

The burden is on the defendant to show satisfactory cause for removal of counsel. In the present case, the record reflects that trial counsel's motion was made "out of an abundance of caution," and that it was motivated by Graddick's own conduct in failing to communicate with Runyon. (App. 2) The present case is similar to *State v. Babb*, 299 S.C. 451, 454-55,

---

[12]    *State v. Graddick,* 345 S.C. 383, 548 S.E.2d 210, 211 (2001).

[13]    *State v. Graddick*, 345 S.C. 383, 548 S.E.2d 210, 211 (2001).

385 S.E.2d 827, 829 (1989), in which the defendant claimed the trial judge abused his discretion by denying the defendant's continuance motion based upon trial counsel's allegedly inadequate time to obtain a handwriting expert.  In affirming the trial judge's ruling, the South Carolina Supreme Court recognized that the record clearly established that any shortage of time to prepare a defense was not the fault of the trial judge or the State, but was Babb's own fault in failing to act.  Therefore, because "a party cannot complain of an error which his own conduct has induced," the Court found the trial judge did not abuse his discretion by denying the continuance motion.  *Id.*

The transcript of the February 27, 1998 motions hearing clearly reflects that Graddick was satisfied with Runyon's counsel and did not request that counsel be removed.  Moreover, the record reflects that counsel was fully willing and able to represent Graddick at the trial, which was held over three months after the trial judge's denial of the motion to be relieved.  Indeed, the trial transcript reflects that Runyon was prepared for trial.[14]

In finding that Runyon provided adequate assistance to Graddick, this court is aware that both the trial court and South Carolina Supreme Court both concluded that at the time of the request, Graddick had presented only conclusory arguments that Runyon was not representing his interests and was not fully prepared to try the case.  On habeas review, Graddick now contends that Runyon's response was "equivocal at the hearing."  However, the record, particularly as expanded through the state PCR proceeding, reveals that counsel was prepared and had fully investigate the state's case and the defense.  (App. 671-672)  As noted previously, Runyon had visited the crime scene, met with the pathologist, discussed the case with Graddick, was aware of the influence of alcohol on the crime, was aware of the "distant wound" theory to rebut malice, was aware of the confusion at the crime scene, and was aware

---

[14]    *See, e.g.,* Runyon's cross-examination of the first prosecution witness, David Smith Tr. 86-105, 111-12); *see also* Runyon's closing argument.  (Tr. 378-92)

of the variance in the line-ups and in court testimony, and had articulated valid trial strategies at the PCR hearing.  Counsel's performance fell within the bounds of *Strickland*.

Next, contrary to the Petitioner's claim in the Petition, Runyon did make a motion for a mental status evaluation, and he testified during the state PCR proceedings that he had moved for that evaluation; the May 1, 1998 evaluation that had been filed was part of the record on appeal.  (App. 527-531)  As a threshold matter, Graddick's claim that Runyon failed to file the motion is without merit.[15]

The mental evaluation never occurred.  (App. 667)  As Runyon explained at the PCR hearing, testimony, Runyon testified that the basis for that submission was because Graddick had not been cooperative in preparing for trial and was not in contact with him and "I didn't know whether that might not be some emotional problem" and asked for the rule to show cause.  (App. 529)  Runyon testified at the PCR hearing, "it became clear once Mr. Graddick showed up . . . that a *Blair* hearing was not really necessary, that it wasn't that he was emotionally upset or psychiatrically [sic] had problems.  He just was not tending to business." (App. 529-530)

As the PCR court found, Graddick failed to present any evidence of his alleged incompetency at the time of trial, and there was nothing in the record to suggest that Graddick suffered from a mental or emotional disease which could have suggested an incompetency to stand trial.  Thus, the PCR court determined that Runyon was under no duty to seek a competency hearing prior to trial.  (App. 668)  Furthermore,  the PCR court held that Petitioner wholly failed to present any evidence of his incompetency at the time of his trial. Importantly, there is no evidence in this record that Petitioner suffered from any mental or emotional disease which could have lead to his incompetency to stand trial.  Testimony was that Petitioner had the ability to rationally consult with counsel and was aware of the nature of

---

[15]     Petitioner's Brief [14-1] at p. 13.

the proceedings that he faced.  He failed to show that counsel was under any duty to seek a competency hearing prior to the trial, and the PCR court dismissed the claim.

With respect to Graddick's next claim, there is no "constitutional minimum" to the number of meetings an attorney and client must have.  Graddick has failed to show prejudice under the Sixth Amendment, and therefore this claim must fail.  *See, e.g., Payton v. Woodford*, 258 F.3d 905, 922 (9th Cir. 2001) (attorney and client conferred only 8.1 hours); *cf.*, *Turner v. Williams*, 35 F.3d 872, 897 (4th Cir. 1994) (number of visits alone rebutted claim of lack of comprehensive discussions).  In the PCR hearing, the judge concluded that there was no actual conflict of interest that would have required counsel to be removed due to their differences. (App. 672-673)

Under *Strickland,* Graddick has failed to carry his burden of proof.  The state court's conclusion in both the direct appeal and state PCR proceeding were a reasonable application of United States Supreme Court precedent and there was no abuse of discretion in the refusal of the court to substitute new counsel.  Petitioner's second ground for relief should be denied and dismissed.

### E.  Ground Three

**Ground Three:**  My rights under Article IV § 2 and the 6th and 14th Amendment[s] were violated when the court allowed inadmissible hearsay at trial.

a.  The trial court allowed inadmissible hearsay at trial, the declarant was not at trial for cross examination.

b.  A witness claimed declarant had confided to him that he had fired a gun during an earlier confrontation and witness described declarant as the other defendant.

c.  That declarant was not at trial and could not be confronted.[16]

---

[16]    This set of issues is exhausted:  This issue was raised in the direct appeal as Issue II, Final Brief of Appellant, p. 9-13.  The South Carolina Supreme Court denied the issue in the direct appeal.

## F.  Discussion of Ground Three

Graddick's third allegation focuses on the trial court's alleged error in allowing inadmissible hearsay to be introduced.  In addressing this issue, the South Carolina Supreme Court summarily held:

> Appellant's remaining issues are disposed of pursuant to Rule 220, SCACR, and the following authorities:  *State v. Mitchell,* 286 S.C. 572, 336 S.E.2d 150 (1985) (improper introduction of hearsay evidence constitutes reversible error only if its admission is prejudicial to the defendant); . . . *State v. Graddick*, supra.

The admission of evidence is largely within the sound discretion of the trial judge, and his discretion will not be disturbed on appeal, absent an abuse of discretion.  *State v. Brock*, 335 S.C. 267, 516 S.E.2d 212 (Ct. App. 1999).  Rule 801(c), SCRE, defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  A statement that is admissible "because it falls within an exception in Rule 803, SCRE, may be used substantively, *i.e.*, to prove the truth of the matter asserted."  *State v. Dennis*, 337 S.C. 275, 523 S.E.2d 173, 177 (1999).  The challenged statement was admissible under both the present sense impression and excited utterance exceptions to the hearsay rule.  The "present sense impression" exception allows introduction of a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."  Rule 803(1), SCRE.  The "excited utterance" exception makes admissible a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."  Rule 803(2), SCRE.  "The rationale behind the excited utterance exception is that the startling event suspends the declarant's process of reflective thought, reducing the likelihood of fabrication."  *Dennis*, 523 S.E.2d at 177; *see also State v. Blackburn*, 271 S.C. 324, 327, 247 S.E.2d 324, 336 (1978).  The "[excited] utterance need be only 'substantially contemporaneous' with the transaction."  *Id.* at 328, 247 S.E.2d at 336; *State v. Burdette*, 335 S.C. 34, 42, 515 S.E.2d 525, 529-30 (1999).  "In determining whether a

statement falls within the excited utterance exception, a court must consider the totality of the circumstances."  *Dennis*, 523 S.E.2d at 177.

In this case, the out-of-court declaration explained why there had been a shooting at the East Cooper Disco an  d was made within one hour of the fracas.  As such, it qualified as a "present sense impression" under Rule 803(1).

Even if the statement were inadmissible as a present sense impression, it nonetheless would qualify as an "excited utterance" under Rule 803(2).  The statement related to a gunshot made during the course of an altercation, which Respondent submits clearly constitutes "a startling event or condition" under Rule 803(2).  *See Dennis*, 523 S.E.2d at 176-77 (gunshot ending fistfight was "startling event or condition").  Also, the statement was made within one hour of the startling event or condition and, was thus "made while the declarant was under the stress of excitement caused by the" original confrontation and shooting.  *See Burdette*, 335 S.C. at 43, 515 S.E.2d at 530 (statement made by victim to police "no more than one hour" between attack on victim and his wife and statement to officer qualified as excited utterance); *see also Robinson v. State*, 730 N.E.2d 185, 193-94 (Ind. 2000) (trial judge did not abuse his discretion by admitting testimony concerning statement by co-defendant for defendant to "get" or "grab the heat" and that the "narcos got" or "jumped out snatched," where the record sufficiently supported the inference that co-defendant witnessed law enforcement's pursuit of defendant; and co-defendant promptly informed defendant of the arrest and told him to "grab the heat," while still under the stress of excitement caused by the startling event).

Although Petitioner raises a Sixth Amendment violation, this issue is without merit. There was no Confrontation Clause violation because (1) Greene's testimony did not implicate Graddick in the commission of any offense.  "No *Bruton* violation occurs unless the non-testifying co-defendant's statement, standing alone, implicates a defendant"; and (2) the statement at issue carried sufficient "indicia of reliability" because it falls within two firmly

rooted hearsay exceptions. *Dennis*, 523 S.E.2d at 178-79; *Burdette*, 335 S.E.2d at 44-45, 515 S.E.2d at 530-31.

Finally, regardless of whether this court were to determine that the trial court erroneously applied South Carolina's evidence rule regarding hearsay evidence, Petitioner is afforded no relief, because federal habeas relief simply does not lie for errors of state law. *Milton v. Wainwright*, 407 U.S. 371, 377 (1972). State courts are the final arbiters of state law. *Martin v. Ohio*, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987); *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); *Smith v. Moore*, 137 F.3d 808, 822 (4th Cir.1998) (refusing to entertain claim that jury instruction misstated South Carolina law). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

Finally, this court's review of the record indicates that this federal issue was not raised at trial and was barred in the appeal, and therefore cannot be raised as a cognizable federal habeas claim. *See Mallory v. Smith*, 27 F.3d 991, 994 (4th Cir. 1994)(federal question must be presented in state court straight-up).

### G.  Ground Four

**Ground Four:** My federal constitutional rights were violated when the court allowed the prosecution to question a witness about invoking his right not to testify.

a. The trial court in this case allowed the prosecution to question a witness pertaining to invoking his right not to self incriminate himself, and this type of questioning made me look bad as though I had something to hide from the jury, in which was prejudicial to me and kept me from having a fair trial.

David Green had exercised his right to self-incrimination and changed his mind. The prosecution was allowed to question the witness pertaining to informing his counsel that he was going to invoke the right not to testify. (Petition at Attachment p. 8.)

Petitioner claims this was prejudicial to him because it made it appear that he had something to "hide" and was contrary to federal law.  (Petition at Attachment p. 8.)[17]

## H.  Discussion of Ground Four

In his final allegation, Graddick contends that constitutional error occurred when the trial court permitted the State to cross-examine David Greene about his prior intention not to testify.  At trial, Greene explained on cross-examination by the State that he had changed his mind at the last minute and decided to testify, stating: "I don't see the reason why not--I shouldn't be testifying, because I was right there.  And I know I do have two charges pending against me.  And I'm going to be honest with you, I know I didn't do nothing and I know Arthur [Graddick] didn't do nothing[.]"  (App. 354)

On appeal, Graddick claimed that this line of questioning improperly drew attention to his own decision not to testify.  The South Carolina Supreme Court held that the trial court did not abuse its discretion in allowing the questioning, relying upon *State v. Lynn*, 277 S.C. 222, 284 S.E.2d 786 (1981), which held that a trial court's ruling concerning the scope of cross-examination of a witness to test his credibility should not be disturbed on appeal absent a manifest abuse of discretion).  As the South Carolina Supreme Court stated:

> The express purpose of the [State's] questioning was to explain why the State did not call Greene as a witness.  Nothing in the record indicates this purpose was a subterfuge.  *Cf. State v. Hughes*, 328 S.C. 146, 153, 493 S.E.2d 821, 824 (1997) (witness may not be called solely for the sake of having witness invoke privilege against self-incrimination, for the purpose of permitting jury to infer wrongdoing from that assertion).  Although Greene stated he had no reason not to testify because he and appellant were innocent, this commentary--even if it can be characterized as a comment on appellant's failure to testify--cannot fairly be attributed to the State.  The Solicitor did not elicit the commentary, nor did she highlight the remarks in any way.  In her closing argument, the Solicitor vigorously assailed Greene's credibility without reference to his decision to testify. The trial court committed no error in permitting the questioning.

---

[17]    This set of issues is exhausted:  These issues were raised in the direct appeal as Question III, Final Brief of Appellant, p. 13-16.  The South Carolina Supreme Court denied relief because it found no abuse of discretion.

*State v. Graddick*, at 377.  This holding was in line with United States Supreme Court precedent as articulated in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) and *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

Although Petitioner also alleges that there was a Sixth Amendment Confrontation Clause violation, this allegation is without merit.  First, Greene's testimony did not implicate Graddick in the commission of any offense, *York v. State*, 242 Ga. App. 281, 528 S.E.2d 823, 83 (Ga. App. 2000) (finding no *Bruton* violation with respect to victim/codefendant's statement that three unknown masked men had forced their way into her home, demanded money and the "stuff" because victim/co-defendant did not know who the intruders were and named no one).  As the court stated in *York*:  "No *Bruton* violation occurs unless the non-testifying co-defendant's statement, standing alone, implicates a defendant."  Second, the statement at issue carried sufficient "indicia of reliability" because it fell within two firmly rooted hearsay exceptions.  *Dennis*, 523 S.E.2d at 178-79; *Burdette*, 335 S.E.2d at 44-45, 515 S.E.2d at 530-31.

Even were this court to assume, *arguendo*, that the admission of the statement was error, any error was harmless and non-prejudicial beyond a reasonable doubt.  This was the basis for the holding by the South Carolina Supreme Court.  "Whether error is harmless depends on the circumstances of the particular case.  No definite rule of law deference is finding, rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case.  Error is harmless when it 'could not reasonably have affected the result of the trial.'"  *State v. Taylor*, 333 S.C. 159, 508 S.E.2d 870, 876 (1998) (citation omitted).  Here, any alleged error "could not have reasonably affected the result of the trial" and must be deemed nonprejudicial, since the out-of-court declarant, (*see York*, and, inferentially, Greene in the present case), did not implicate Petitioner in the commission of any offense; and because Scott's eyewitness identification of Petitioner as the man who shot and killed the victim is far more prejudicial to Petitioner than testimony that a member of

Petitioner's group had fired the gunshot which broke up the disturbance at the East Cooper Disco.  The absence of prejudice to Petitioner is further demonstrated by the fact virtually every witness who testified agreed that a gunshot was, in fact, fired during the course of the altercation in Mount Pleasant, and that the altercation immediately ended after that shot. Further, Greene testified at trial and denied that either he or Petitioner had a weapon.  He also asserted that Petitioner was not the shooter, although he reluctantly admitted on cross-examination that he did not see who shot the Victim and was unaware of who actually shot the Victim.  Therefore, any error is harmless beyond a reasonable doubt.  *Taylor.*

Petitioner's final claim is without merit and should be denied and dismissed.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the Respondents' Motion for Summary Judgment **[11-1] should be granted,** and that Petitioner's Petition **[1-1] should be denied and dismissed.**

GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

November 16, 2006

Charleston, South Carolina

<u>**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
& The Serious Consequences of a Failure to Do So**</u>

        The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its service.  28 U.S.C. § 636 and Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail.  Fed. R. Civ. P. 6.  Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed.  <u>Advance Coating Technology, Inc. v. LEP Chemical, Ltd.</u>, 142 F.R.D. 91, 94 & n. 3, 1992 U.S.Dist. LEXIS® 6243 (S.D.N.Y. 1992).  A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge.  *See* <u>Mathews v. Weber</u>, 423 U.S. 261, 270-271 (1976); and <u>Estrada v. Witkowski</u>, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

        During the period for filing objections, **<u>but</u> <u>not</u> <u>thereafter</u>**, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections.  **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.**  *See* <u>Keeler v. Pea</u>, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and <u>Oliverson v. West Valley City</u>, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995).  Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge.  *See* <u>United States v. Schronce</u>, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, <u>Schronce v. United States</u>, 467 U.S. 1208 (1984); and <u>Wright v. Collins</u>, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985).  Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object.  In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues.  <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991).  *See also* <u>Praylow v. Martin</u>, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985).  In <u>Howard</u>, *supra*, the Court stated that general, non-specific objections are *not* sufficient:

        **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object.  The district court's attention is not focused on any specific issues for review, thereby making the initial reference to**

> **the [magistrate judge] useless.  * * *  This duplication of time and effort wastes
> judicial resources rather than saving them, and runs contrary to the purposes of
> the Magistrates Act.  * * *   We would hardly countenance an appellant's brief
> simply objecting to the district court's determination without explaining the
> source of the error.**

*Accord* <u>Lockert v. Faulkner</u>, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating
>
> only 'I object' preserves no issue for review.  * * *  A district judge should not
>
> have to guess what arguments an objecting party depends on when reviewing a
>
> [magistrate judge's] report.**

*See also* <u>Branch v. Martin</u>, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and <u>Goney v. Clark</u>, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").     **This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.**  *See* <u>Wright v. Collins</u>, <u>supra</u>; and <u>Small v. Secretary of HHS</u>, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**
